UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN HOGAN,

                Plaintiff,

    -vs-

BRIAN FISCHER, Commissioner D.O.C.S.;
JAMES T. CONWAY, Superintendent; PAUL
CHAPPIUS, Deputy Superintendent For
Security; EDWIN MENDEZ, CRAIG BALCER,
Sergeants; CHRISTOPHER J. ERHARDT, GARY
J. PRITCHARD, KEVIN J. GEFERT, NICHOLAS
P. LANNI, NICHOLAS J. PIECHOWICZ, JOHN
DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN
DOE #4, JOHN DOE #5, JOHN DOE #6, JOHN
DOE #7, CORRECTION OFFICERS; JANE DOE
#1, JANE DOE #2, Nurses,

    Defendants.

**DECISION AND ORDER
No. 09-CV-6225(MAT)**

---

## I.    Introduction

Pro se plaintiff John Hogan ("Hogan" or "Plaintiff"), an inmate at Attica Correctional Facility, commenced this action pursuant to 42 U.S.C. § 1983. In his Complaint, Hogan alleged for his first claim that Commissioner Fisher unlawfully allowed him to be transferred to Attica from Clinton Correctional Facility. In the remaining claims (two through sixteen), Hogan alleged that the other defendants, who hold administrative and staff positions at Attica, committed various constitutional violations against him. On initial screening, the Court (Siragusa, D.J.) dismissed the first claim for failing set forth a cognizable constitutional claim, and dismissed Commissioner Fischer as a defendant. The Court

also dismissed the claims brought against Superintendent Conway and Deputy Superintendent of Security ("DSS") Chappius in their official capacities. See Dkt #4. The remaining claims were allowed to proceed.

The parties exchanged written discovery over the next three years. Presently pending are Plaintiff's Motion to Strike Respondent's Answer (Dkt #11), filed on 23, 2009; Plaintiff's Motion for Default Judgment (Dkt #59), filed March 18, 2010; Plaintiff's Motion for Summary Judgment (Dkt #60), filed April 20, 2010; Defendants' Motion to Dismiss (Dkt #61), filed May 3, 2010; Plaintiff's Motion to Allow Reply (Dkt #72), Motion to Strike (Dkt #73), Motion for Time (Dkt #74), all filed August 26, 2010; and Plaintiff's Motion to Compel (Dkt #102), filed May 7, 2012.

For the reasons that follow, Defendants' Motion to Dismiss is granted. Plaintiff's pending motions are denied as moot in light of this disposition.

**II.  Background**

Plaintiff was transferred from Sullivan Correctional Facility in June 2007, to Attica, allegedly in retaliation for being a "writer" (an inmate who files many grievances) and "doing his job" on the Inmate Liaison Committee. Dkt #1 at 7.[1] Upon arrival at

---

[1]

Documentation submitted by Plaintiff reveals, however, that Plaintiff wished to be moved to a facility nearer to his home, and Attica was closer than Clinton. See Dkt #1 (attachments).

Attica, Plaintiff states, he was "tagged as a 'writer'" as well as a "rapo'" because he is a convicted sex offender. Id. According to Plaintiff, two weeks after his arrival, staff at Attica began a campaign of harassment and retaliation, leading him to file numerous grievances and ultimately this lawsuit.

Plaintiff's supporting allegations cover a number of disparate topics. To avoid unnecessary repetition, the facts pertinent to the alleged constitutional violations will be set forth below in the sections addressing Plaintiff's specific claims.

## III. General Legal Principles

### A.    42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish the following elements: (1) conduct attributable at least in part to a person acting under color of state law, and (2) deprivation, as the result of the challenged conduct, of a right, privilege, or immunity secured by the Constitution or laws of the United States. Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir.1993).

### B.    Motions to Dismiss Under F.R.C.P. 12(b)(6) & 12(c)

Defendants cite both Rule 12(b)(6) and Rule 12(c) in support of their motion to dismiss. Because Defendants have filed an Answer to the Complaint, it appears that this motion is more appropriately made pursuant to Rule 12(c). The Court need not decide the issue because in deciding a Rule 12(c) motion, the same standard as that

applicable to a motion under Rule 12(b)(6) is applied. Desiano v. Warner-Lambert & Co., 467 F.3d 85, 89 (2d Cir. 2006).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Thus, unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Twombly, 550 U.S. at 570. The Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. E.g., Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007); Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003).

## IV.  Discussion

Before proceeding, the Court notes that in his Complaint, Plaintiff indicates that the constitutional bases for all his

-4-

claims are as follows:  "Violation of Article's [sic] 3., 5., 7., 12. and 25[.]" Dkt #1 (<u>passim</u>). It is unclear what Hogan intends to convey by this statement. Construing these numbers to refer to amendments rather than articles similarly does not clarify the legal bases for his claims. The Court thus has attempted to give the broadest possible meaning to the allegations in Plaintiff's <u>pro se</u> papers.

### A.   Verbal Harassment (Second Claim)

Hogan's second claim alleges that throughout his stay at Attica, he "has been continuously harassed by staff" and Superintendent Conway and DSS Chappius failed to prevent or remedy the situaton. Defendants argue that Hogan has failed to state a claim because he has not sufficiently alleged personal involvement by Conway and Chappius. <u>See</u> <u>Farrell v. Burke</u>, 449 F.3d 470, 474 (2d Cir. 2006) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation omitted). Defendants also contend that verbal harassment alone is not actionable under § 1983.

The Court agrees with Defendants that even if there was personal involvement by Chappius and Conway, allegations of verbal harassment, standing alone, are not redressable under 42 U.S.C. § 1983. <u>See</u>, <u>e.g.</u>, <u>Purcell v. Coughlin</u>, 790 F.2d 263, 265 (2d Cir. 1996) ("The claim that a prison guard called [plaintiff] names also

did not allege any appreciable injury and was properly dismissed.").

## C. Failure to Prevent Theft of Personal Property (Third Claim)

Hogan alleges that on February 17, 2008, his cell was robbed of certain personal property, and that Conway and Chappius "allowed this to happen." Plaintiff states that during a "bar check" of his cell, the cell door was purposely left open so that the inmate porters could steal his things.

As Defendants argue, even if Hogan had adequately alleged any personal involvement by Conway and Chappius, the claim still would be fatally defective. Even an intentional deprivation of an inmate's property that is random and unauthorized does not give rise to a due process claim so long as "adequate state post-deprivation remedies are available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). New York law provides such a remedy in the form of an action before the New York Court of Claims. See N.Y. Ct. Cl. Act § 9.[2] Therefore, Hogan does not have a constitutional claim against Chappius and Conway for the theft of his personal property. See Dorsey v. Fisher, 9:09-CV-1011GLSD, 2010 WL 2008966, at *10-11 (N.D.N.Y. May 19, 2010) ("Dorsey does not clearly allege which of the twenty-five defendants named in his amended complaint were

---

[2]

Hogan, in fact, has filed numerous complaints in the Court of Claims.

actually responsible for the theft of his property from his cell. Dorsey merely alleges that the defendants allowed inmate porters into his cell to steal property. . . . Even if Dorsey had identified which particular defendant was responsible for the theft, his claim would still fail" because "New York law provides . . . a remedy in the form of an action before the New York Court of Claims.") (citing Hudson, 468 U.S. at 533; other citations omitted).

### D. Theft of Magazine Subscriptions (Fourth Claim)

As his fourth cause of action, Hogan alleges that Corrections Officer ("CO") Erhardt, Superintendent Conway, and DSS Chappius "allowed the theft of [his] magazine subscriptions by allowing inmates to pass them out." This claims must be dismissed because Hogan has an adequate state-law remedy for the alleged unlawful deprivation of his personal property. See Dorsey, 2010 WL 2008966, at *11.

### E. Property Damage (Fifth Claim)

Hogan alleges, in support of his fifth cause of action, that CO Biekert "knocked [his] tv to the flor[,] damaging it" on February 14, 2009. This claims must be dismissed because Hogan has an adequate state-law remedy for the alleged unlawful damage to his personal property. See Dorsey, 2010 WL 2008966, at *11.

**F.    Assault (Fifth, Sixth, Seventh, Eighth, and Ninth Claims)**

Plaintiff's fifth, sixth, seventh, eighth, and ninth claims all relate to an incident that occurred on February 15, 2009, in which Plaintiff alleges that he was sprayed in his face, mouth, nose, ears, and on the rest of his body, with an "unknown substance" possibly consisting of vinegar and feces. According to his grievance, three corrections officers came into his cell after lockdown and sprayed him while he was lying in bed. Plaintiff stated in his grievance that other inmates saw three officers with brown paper bags over their heads with eye-holes cut out running away from the area. Plaintiff was able to knock one of the bottles out of their hands, and it appeared to contain machine oil. Plaintiff, contends, he was sprayed with a different substance (the possible vinegar-feces mixture), which burned his eyes.

Plaintiff contends that Erhardt, the gallery officer, opened gallery gate or gave the keys to another officer, thereby allowing Plaintiff be assaulted. In addition to Erhardt, Plaintiff names three "John Doe" corrections officers as his assailants and several "John Doe" officers as supervisors liable for failing to prevent the assault. Even if Plaintiff adequately had alleged personal involvement, these claims premised on the spraying incident all must fail as Plaintiff has not demonstrated more than a de minimis injury.

-8-

The Eighth Amendment's prohibition of cruel and usual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The force used here was de minimis. See Tafari v. McCarthy, 714 F. Supp.2d 317, 341 (N.D.N.Y. 2010) (corrections officer's throwing of urine and feces on inmate while he was sleeping constituted a de minimis use of force). "The question, then, is whether the force used was 'of a sort repugnant to the conscience of mankind.'" Tafari, 714 F. Supp.2d at 341 (quoting ). Spraying someone with feces and vinegar is "certainly repulsive," but it "is not sufficiently severe to be considered 'repugnant to the conscience of mankind.'" Id. (citing, inter alia, Fackler v. Dillard, No. 06-10466, 2006 U.S. Dist. LEXIS 61480, 2006 WL 2404498, at *1 (E.D. Mich. Aug. 16, 2006) (holding that an officer who threw a four-ounce cup of urine on an inmate which caused no physical injury "was not so grievous as to rise to the level of an Eighth Amendment violation")).

With regard to the corrections officers who allegedly failed to protect Hogan from the assault, the Court notes that "[l]aw enforcement officials can be held liable under § 1983 for not intervening in a situation where excessive force is being used by another officer." Jean-Laurent v. Wilkinson, 540 F. Supp.2d 501, 512 (S.D.N.Y. 2008) (citing O'Neill v. Krzeminski, 839 F.2d 9,

11-12 (2d Cir. 1988) (citations omitted)). Liability attaches only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene. Ricciuti v. N.Y. City Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997)). A corrections officer cannot be held liable for the failure to intercede unless such failure permitted fellow officers to violate an inmate's "clearly established statutory or constitutional rights" of which a reasonable person would have known. Id. at 129. Here, as discussed above, the spraying of a noxious substance did not constitute an unconstitutional use of force as defined in Eighth Amendment jurisprudence. Therefore, supervisory liability does not attach.

### G.   Failure To Provide Medical Treatment (Tenth, Eleventh, and Twelfth Claims)

The tenth claim alleges that John Doe #7, a corrections officer, "refused Plaintiff medical attention" after the spraying incident. The eleventh claim alleges that Jane Doe #1, "who was the nurse writing the treatment plan, refused to treat Plaintiff or schedule any testing . . . scheduling [sic] him to see the doctor." The twelfth claim asserts that Jane Doe #2, "who was the examining nurse, refused to acknowledge any of Plaintiffs [sic] injuries and refused any treatment for said injuries." The only physical

injuries that Hogan noted after the spraying were (1) a "cut/scratch" on his neck which he claims had to have occurred during the struggle for the spraybottle's nozzle, see Dkt #1, Ex. 18, and a "burn mark on [his] penis from the oil-like substance[,]: id., Ex. 19.

To maintain a claim for deliberate medical indifference, Ford must prove "deliberate indifference to [his] serious medical needs." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied, 513 U.S. 1154 (1995) (quotation omitted). This standard requires proof of objective and subjective prongs. Id. (citation omitted). As an initial matter, the documentation Plaintiff has submitted in support of his Complaint belies his claim that he did not receive medical treatment. He states in his grievance that a 9:00 a.m. the morning after the spraying, he went to medical unit. Two nurses "checked out [his] injuries" and called for a Mental Health Unit nurse to come see him. Dkt #1, Ex. 19. The only injury referenced in his narrative regarding his check-up with the nurses is the alleged burn mark on his penis. One of the nurses looked at it said it appeared to be a "fungi", not a burn, but Plaintiff maintains it was not there before the assault. Plaintiff states that the nurses did not treat the fungi/burn mark. Id. Accepting Plaintiff's allegations as true, they fall far short of the mark and do not establish that the John Doe supervisor or the Jane Doe nurses were deliberately indifferent to a serious medical need

presented by him. See <u>Sonds v. St. Barnabas Hosp. Corr. Health
Servs.</u>, 151 F. Supp.2d 303, 311 (S.D.N.Y. 2001) (cut finger with
"skin ripped off" is insufficiently serious for purposes of an
Eighth Amendment deliberate indifference claim).

**H.   Excessive Use Of Force (Thirteenth and Fourteenth Claims)**

Plaintiff alleges that on February 16, 2009, CO Gefert
assaulted him by lightly slapping him on the face. Plaintiff
further alleges that Sergeant Balcer, the area supervisor, failed
to intervene and allowed Plaintiff to be slapped. Plaintiff does
not allege that Sergeant Balcer slapped him.

Plaintiff has not stated a cognizable constitutional claim, as
a "light slap" constitutes a <u>de minimis</u> use of force, not repugnant
to the conscience of mankind. See <u>Jones v. Goord</u>, 2008 WL 904895,
at *4 (W.D.N.Y. 2008) ("At most, plaintiff was struck by an open-
handed slap, which, regardless of defendant [officer's] motivation,
is considered a <u>de minimis</u> use of force."); <u>Santiago v. CO Campisi
Shield No. 4592</u>, 91 F. Supp.2d 665, 674 (S.D.N.Y. 2000). Because
the "light slap" did not constitute an unconstitutional use of
force as defined in Eighth Amendment jurisprudence, supervisory
liability does not attach.

**I.   Failure To Install Surveillance Cameras (Fifteenth Claim)**

Hogan alleges that Superintendent Conway "refused to
acknowledge that cameras are needed throughout" Attica in order to
protect inmates from abuse by prison staff. Plaintiff alleges that

this issue has been raised repeatedly in Inmate Liaison Committee executive meetings. Plaintiff asserts that if the appropriate cameras had been in place, they would have acted as a deterrent and the spraying incident would not have occurred.

In this case, there are no allegations that Conway had knowledge of a dangerous situation with regard to Hogan in particular and failed to act; that he was aware of a specific dangerous condition on Hogan's cell block; that he was aware of other similar assaults; or that he was in the vicinity during the assault and failed to come to Hogan's aid. Instead, Hogan is relying upon the dangerous conditions in general existing at Attica, stating that there is "massive abuse" of inmates by the staff. These allegations are insufficient to state a claim based upon the theory of failure to protect against the general threat of harm. Coronado v. Goord, No. 99CIV. 1674(RWS), 2000 WL 1372834, at*6 (S.D.N.Y. Sept. 25, 2000) (stating that in order to make out a failure to protect against general violence, inmate who was stabbed by another inmate in the recreation yard had to plead facts stating five elements, including, that there were numerous other inmate-on-inmate attacks in the yard; these attacks posed a substantial risk of serious harm; and that if prison officials had installed metal detectors and preventively searched inmates for weapons, the inmate would not have been stabbed).

-13-

**J.   Verbal Harassment (Sixteenth Claim)**

On February 21, 2009, Plaintiff alleges that CO Piechowicz walked by his cell and threatened him with death by stating, "You're dead Hogan, you fucking rat fuck." Dkt #1, Ex. 20. To the extent Hogan seeks to assert a claim of verbal abuse, the Court notes that verbal harassment or profanity alone, no matter how inappropriate, unprofessional, or reprehensible it might seem, when it is unaccompanied by any quantifiable injury, does not constitute the violation of a federally protected right, and therefore is not actionable under 42 U.S.C. § 1983. See <u>Aziz Zarif Shabazz v. Pico</u>, 994 F. Supp. 460,  475 (S.D.N.Y. 1998) (dismissing claim by prison inmate that prison employees had verbally taunted him with racial slurs and threats of physical injury (e.g., "We have been waiting on you a very long time, and we are going to kill your 'black ass' when you come out if you do not voluntarily submit to and comply with the strip search procedure"), standing alone, did not allege violation of any federally protected right, and did not support claim under § 1983); <u>see</u> <u>generally</u> <u>Purcell v. Coughlin</u>, 790 F.2d at 265.

**V.   Conclusion**

Defendants' Motion to Dismiss (Dkt #61) is granted, and Plaintiff's Complaint (Dkt #1) is dismissed in its entirety with prejudice.  Plaintiff's Motion to Strike Respondent's Answer (Dkt #11), Plaintiff's Motion for Default Judgment (Dkt #59),

Plaintiff's Motion for Summary Judgment (Dkt #60), Plaintiff's Motion to Allow Reply (Dkt #72), Motion to Strike (Dkt #73), Motion for Time (Dkt #74), and Plaintiff's Motion to Compel (Dkt #102) are dismissed as moot.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     October 10, 2012
           Rochester, New York